## MOSS v. MAYO.

WHERE property has been assessed to an unknown owner and sold for the tax, and a deed executed to the purchaser, the fact that the agent of the owner of the lot paid the tax on the wrong lot by mistake, is not such a mistake as a Court of Equity will relieve against.

Under the Act of April 3d, 1860, "Providing for the collection of Delinquent Taxes in the City and County of Sacramento," where several lots are assessed to unknown owners by fictitious names, and suits are instituted for the collection of the several taxes, there is no valid objection to having one affidavit for, and one order of publication of summons, apply to the several cases. In such case, the publication of one summons gives the Court jurisdiction in each case.

In such case a judgment rendered becomes a lien only on the property of the persons against whom it is rendered; and where no judgment is rendered either against the real owner by name or the fictitious person representing such real owner, a Court of Equity will enjoin the purchaser from dispossessing the real owner by a writ of assistance obtained under the tax deed.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The facts are stated in the opinion of the Court.

*Winans & Hyer*, for Appellant.

*D. W. Welty*, for Respondent.

On petition for rehearing, which was denied, respondent's counsel filed the following argument:

The view taken by the Court appears to have been, that to authorize the sale of property for delinquent taxes against unknown owners, they must not only be represented on the record by a fictitious name, but also that formal judgment must be rendered against them under said fictitious name; and following out that theory, the Court held, that because the plaintiff in this case, the real claimant of the property, was not bound by a formal judgment, the sale was a nullity, as far as her rights in the premises were concerned.

We think an examination of the entire statute will show that such was not the intention of the Legislature in framing the act, and that it in terms does not require a formal judgment to bind the property, but merely that all parties known should be before the

Court by real names, and all unknown by a fictitious name; and then, after proper notice given, that a decree against the property should be made. The statute will be found in Statutes of 1860, 139–141. In the first section it legalizes certain assessments and renders them binding, both in law and equity, against the persons and property assessed.

Here, it will be observed, a special lien is created upon the property, regardless of the ownership thereof, and it is bound for the payment of the taxes.

The second section prescribes the form of complaint to be filed, and the defense permitted.

The third section provides that certified copies of entries of the assessment rolls, showing unpaid taxes against any person or property, shall be evidence, etc.; thus again recognizing most clearly the difference between a personal assessment and one against the property merely.

The fourth section enacts that judgments rendered in such cases shall become liens (from Justices' Courts) in like manner as judgments rendered in the District Court under that act; that is, become liens upon all property of the defendants liable to taxation, and may be enforced against the same.

Now the Court in reviewing this section seems to have held, that the only effect of a payment rendered under this act was to give a lien on the property of the defendants in the suit, and that only from the time of docketing the judgment—and that before that time, *i. e.*, the rendition of the judgment, there was no lien.

Now we understand the statute differently. We contend that the statute made the tax a lien on the real estate, and that this section only enlarged the lien—that is, gave a judgment which operated not only as a lien upon the specific real estate bound for the tax, but also upon all the other property of the defaulting tax payer. If this be so, then the only penalty attached to the want of taking a formal judgment against either the real or fictitious defendants would be, that the plaintiff would fail to obtain a general lien on all his other property; but we contend that if the record shows a decree, judgment, or other judicial determination of the amount of delinquency, fact of nonpayment, and the proper parties were

Moss *v.* Mayo.

before the Court—it was competent for the Court to order the property sold; and a sale of it passed the title to the purchaser thereat.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

The defendant was a purchaser of a certain lot in the City of Sacramento owned by the plaintiff, at a Sheriff's sale, under a judgment rendered for taxes against certain persons, not including the plaintiff (the lot being assessed to "unknown owners"). He obtained a Sheriff's deed under his purchase, and also a writ of assistance to be put in possession of the property. The plaintiff then brought this suit to enjoin him from enforcing the writ of assistance, averring that she resided in the City of San Francisco, and her agent at Sacramento had by mistake paid taxes on another lot that she did not own, instead of this one which she did own; that she had no notice of the tax suit or the proceedings under it, and that no summons had been served according to law in that suit to give the Justice of the Peace who rendered the judgment juris- diction of the action. She avers readiness to pay to the plaintiff all expense that he has incurred, upon his releasing the claim. The Court denied the injunction; sustained a demurrer to the com- plaint, and rendered a judgment for the defendant, from which order and judgment the plaintiff appeals.

The suit before the Justice for the delinquent taxes was brought in the name of "The People of the State of California *v.* John Doe 232, M. A. Parker *et al.*," and was commenced June 22d, 1861. An affidavit was made and filed by D. C. Thomas, who styled himself one of the attorneys for the plaintiff, in which several suits for taxes are described, including the one under consideration; in which it is stated that the property described in the several suits was assessed to unknown owners; that neither the plaintiff nor their attorneys knew the true owners of any of the several tracts, or their places of residence, and therefore the fictitious name of John Doe had been used as an *alias* for the true owner; and that he had been informed and believed that those whose true names are men- tioned in the several actions were the true owners, or had an interest

in the property named in the suits in which they were made parties. The Justice thereupon entered a general order in his docket in the form of a summons directed to the persons thereinafter named, and to all owners and claimants, known and unknown, of any of the lands thereinafter described; and after reciting that Cornelius Cole, District Attorney of the County, had filed divers complaints in his Court to recover the taxes levied upon property in the City of Sacramento and assessed to unknown owners, and asking for a decree and order to sell the premises described in said complaints to satisfy said tax lien ; referring to the original complaints on file, there followed a description referring to the, several suits, that relating to the one under consideration being as follows : " For $29.44 against John Doe 232, Mary A. Parker, Catherine M. Hardenbergh, and the north seventeen feet of lot No. 6, between N and O, and Front and Second streets." The order then recites the affidavit made by Thomas, and states that by virtue and in pursuance of the provisions of the sixth section of an act passed April 3d, 1860, for the collection of delinquent taxes, the defendants named in the several suits, and all owners and claimants, known and unknown, and each of said tracts of ·land, were thereby summoned to appear before the Justice at a certain day therein named, to answer to the plaintiff, who sues to recover from them the sums mentioned in connection with their names, and for a decree and sale of their interest in the property to satisfy the lien for taxes ; and that if they failed to appear and answer, the plaintiff would take a judgment against them as prayed for in the complaints on file in his office. The Justice further ordered and directed that summons in said causes be served by publishing the whole of this order one time per week for three months in the *Daily Bee,* a newspaper published in said county. This whole order was published in the *Bee* as provided for, which was all the service of summons in the case, and judgment was rendered thereon in favor of the plaintiff, on the day named, under which judgment the defendant purchased.

The sixth section of the act under which this tax suit was brought provides, that if the name of the owner of the property be unknown, or it has been assessed to an unknown owner, the person liable to pay the taxes may be sued by a fictitious name, and the

summons be served in such manner as the Court may direct, and that the deed derived from the sale of such property shall be equally conclusive against the true owner as if the action had been prosecuted against him by his real name. And Sec. 5 provides that "any deed derived from a sale of real property under this act shall be conclusive evidence of title, except as against actual frauds, or prepayment of the taxes, and shall entitle the holder thereof to a writ of assistance from the District Court to obtain possession of such property."

In this case it is not alleged that there was any fraud, or that the taxes had ever been paid—but it is urged that the plaintiff's agent acted under a mistake in paying the taxes upon the wrong lot, and that she is therefore entitled to relief in equity. It is clear, however, that this is not such a mistake as a Court of Equity will relieve against. It is further urged that the judgment under which the sale was made was void, on the ground that the summons was not served by publication or otherwise, as required by the Practice Act, and that the affidavit of Thomas is not sufficient under the same act. It is true, that the statute under which the judgment was rendered provides that the Civil Practice Act, "so far as the same is not inconsistent with the provisions of this act, is hereby made applicable to proceedings under this act;" and it is also true, that the affidavit is not such, nor was the summons served, as is required by the Practice Act. But this was not necessary, as this matter of the service of summons in cases like the present, where the property was assessed to unknown owners, was provided for in the sixth section of the act, which governed and controlled the action of the Court upon this subject. We see no valid objection to the manner in which one affidavit and one general order of service of summons was made to apply to several cases. The statute does not require that a special order upon this subject should be made in each case. No person was injured by making one order apply to numerous cases; and the order referred to stated all the material facts relative to each separate action that were necessary to identify the action, its subject matter, and the names of the parties and the relief prayed for. The order was clearly in accordance with the provisions of the sixth section of the

28

act in question. The time allowed for publication of summons was sufficiently liberal, and was in all respects reasonable.

The statute under which these proceedings were had provides that the judgment for delinquent taxes, when properly docketed in the Clerk's office, shall "*become liens upon all property of the defendants liable to taxation,*" and the lien is not limited to the particular property on which the taxes accrued. It is made a lien upon the property of the defendants against whom the judgment is rendered, but no others. The judgment in this case is, that the "plaintiffs do have and recover from defendants, Mary A. Parker and Catherine M. Hardenbergh, the sum of $37.01, together with $19.80 costs, and that if the same is not paid, all the right, title, and interest of each of said defendants, and of John Doe 232, representing all other owners or claimants of, in, and to the property described in the complaint, to wit: the north seventeen feet of lot No. 6, between N and O, and Front and Second streets, in the City of Sacramento, to be sold to pay the same and discharge the liens plaintiff held for the taxes levied thereon and sued for." It will be seen that there is no personal judgment against any person except Mary A. Parker and Catherine M. Hardenbergh, and the docketing of the judgment only made the same a lien upon their property. A deed made in pursuance of a sale under this judgment would only convey such interest as they may have had in the premises at the date of the docketing of the judgment. The title of the plaintiff in this action, or her possession, or right of possession, cannot be affected by such deed, because she is not one of the defendants to the action by her own proper name, and there is no judgment for the recovery of the taxes sued for against "John Doe 232," the fictitious name used to represent her as the real owner. The defendant has the right, under his writ of assistance, only to dispossess the persons against whom the judgment for the taxes was rendered, and not the plaintiff. It appears that he was about to dispossess the plaintiff by virtue of the writ, which he had no right to do, and she was entitled to an injunction to restrain him from dispossessing her. It follows that the Court erred in refusing the writ and dismissing the action.

The judgment of the Court below is therefore reversed and the cause remanded.